UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| CAPEFIRST FUNDING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-979-GBL-JFA |
| | ) | |
| BOTANICAL SKIN WORKS, LLC, et al. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendant Sharon Kinnier's ("Defendant") Motion for Summary Judgment under Federal Rule of Civil Procedure 56. (Doc. 33). This is an action for breach of contract brought by Plaintiff Capefirst Funding, LLC ("Capefirst") against Defendants Botanical Skin Works, LLC ("BSW") and Sharon Kinnier ("Kinnier"). (Doc. 1-1). Defendant argues she is entitled to summary judgment on Count VI ("Indemnification against Ms. Kinnier under the Kinnier Guaranty") and Count VII ("Breach of contract against Ms. Kinnier under the Kinnier Guaranty"), as well as on Defendant's Counterclaim ("Breach of Contract, or Alternatively, Suit for a Declaratory Judgment").

The issue before the court is whether the plain language of the Mutual Release Agreement terminated Ms. Kinnier obligation to indemnify BSW under her Validity Guaranty. The Court DENIES Defendant's Motion for Summary Judgment (Doc. 33) because the plain language of Paragraph 8, read in the context of the whole Mutual Release Agreement, does not immediately terminate Defendant's indemnification obligation under the Validity Guaranty. Rather, termination of her obligations is subject to the conditions set out in Paragraph 1 and 2(a), namely, payment of the $195,000.00 Settlement Amount.

## I.    BACKGROUND

Capefirst Funding is a Limited Liability Company organized under the laws of the Commonwealth of Virginia, with its principal place of business in Reston, Virginia. (Doc. 2-1). Botanical Skin Works was a Limited Liability Company organized under the laws of the State of Maryland, with its principal place of business in Baltimore, Maryland. *Id.* Ms. Kinnier was the Managing Director of BSW. *Id.* At the time of the matters described in the Complaint, BSW was engaged in the manufacture and sale of organic and natural skincare and related products. *Id.* Capefirst is a company that loans money to other businesses in return for a security interest in accounts receivables. *Id.* These loans are commonly referred to as "Factoring Agreements." *Id.* Capefirst and BSW had two such "Factoring Agreements;" the parties entered into the first Factoring Agreement on May 16, 2011 and the second Agreement, which supersedes the first, on February 1, 2012. *Id.* Also on May 16, 2011, Ms. Kinnier and Capefirst entered into a Validity Guaranty (the "Kinnier Guaranty") in which she agreed to indemnify Capefirst from any damage or loss Capefirst sustained as a result of the breach of the representations to Capefirst in the Kinnier Guaranty; as a result of Capefirst's reliance on any misstatement, fraud, deceit, or criminal act on the part of an officer, employee, or agent of BSW; and from any costs incurred by Capefirst in the enforcement of any rights granted to it in the Kinnier Guaranty. (Doc. 34-4).

In 2012, BSW faced financial difficulties, and the parties entered into negotiations to settle and resolve outstanding obligations. (Doc. 34). In January 2013, Capefirst and Kinnier, along with other parties, executed a Mutual Release Agreement ("the Agreement"). (Doc. 2-1). Paragraph 1 of the Agreement states that, before February 13, 2013, Botanical Skin Works shall pay to Capefirst $195,000 (the "Settlement Amount") in full satisfaction of all past, present, and future claims. *Id.* Paragraph 2(a) states that "conditioned upon Capefirst Funding's receipt of

2

the Settlement Amount, the Capefirst Parties . . . hereby release, acquit, and forever discharge the BSW Parties . . . from any and all claims, actions, and demands . . . including but not limited to those arising under the Factoring Agreement . . . ." *Id.* Paragraph 8 of the contract states:

> The Parties hereby agree that the Factoring Agreement is, and shall be immediately terminated and shall be null, void and of no future force and effect. Any past, present or future rights or obligations of the Parties under or related to the Factoring Agreement, including without limitation any guarantees provided by the BSW Parties in relation thereto, shall likewise be terminated and shall be null, void and of no future force and effect.

*Id.* BSW failed to pay the Settlement Amount when due on February 13, 2013. (Doc. 34).

On July 7, 2015, Capefirst filed a complaint in the Circuit Court of Fairfax County against BSW, Kinnier, and BSW's CEO Robert W. Gast, Jr.[1]  (Doc. 1-1).  The Complaint alleged a claim for indemnification against Ms. Kinnier under the Kinnier Guaranty (Count VI) and a claim for breach of contract against Ms. Kinnier under the Kinnier Guaranty (Count VII). *Id.*  On August 3, 2015, Capefirst filed a Notice of Removal with this Court and the Fairfax County Circuit Court.  (Doc. 1).  On August, 10, 2015, Ms. Kinnier filed an Answer and a Counterclaim for breach of contract, or, alternatively, for declaratory judgment. (Doc. 2).  In the Counterclaim, Ms. Kinnier alleges that Capefirst breached the Mutual Release Agreement by including her in this action, or, in the alternative, she seeks a declaratory judgment from this Court stating that the Factoring Agreements and any related guaranties, including the Kinnier Guaranty, are terminated, null, and void under the Mutual Release Agreement. *Id.*

On December 24, 2015, Ms. Kinnier filed a Motion for Summary Judgment, seeking summary judgment upon Count VI and Count VII of the Complaint and summary judgment on the single count in the Counterclaim. (Doc. 33).

---

[1]       Mr. Gast was later dismissed from the action on December 21, 2015. (Doc. 25).

3

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Anderson*, 477 U.S. at 247-48).

A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477

U.S. at 248).  Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## III.   ANALYSIS

The Court denies Defendant's Motion for Summary Judgment because interpreting the plain language of the Mutual Release Agreement, the termination of Defendant's obligations as described in Paragraph 8 is conditioned on payment of the Settlement Amount set out in Paragraph 1; therefore, the Agreement did not terminate Defendant's obligations under the Kinnier Guaranty immediately upon execution of the Mutual Release Agreement and Defendant is not entitled to the release provision in Paragraph 2(a).

### A.   The Plain Language of the Mutual Release Agreement Does Not Terminate Ms. Kinnier's Obligation under the Kinnier Guaranty

The Court holds that the plain language of the contract did not immediately terminate Ms. Kinnier's indemnification obligation under the Kinnier Guaranty because the termination provision in Paragraph 8 is conditioned upon receipt of the Settlement Amount.

The Mutual Release Agreement designates Maryland law as governing the Agreement; therefore, this Court applies Maryland contract law to interpret the agreement.  (Doc. 2-1). Under Maryland law, settlement agreements are contracts between the parties subject to the rules of contract interpretation. *See Rock v. McHugh*, 819 F. Supp. 2d 456, 466 (D. Md. 2011) (citing *Campbell v. Geren*, 353 Fed. Appx. 879, 882 (4th Cir.2009)).  Maryland applies the "objective theory of contracts." *Id.* at 467.  Under this theory, "unambiguous contract terms are given their plain meaning, regardless of the parties' intentions at the time the contract was formed." *Id.* (citing *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 448 (2008)).

Interpretation of a written contract is a question of law for the court. *See Suburban Hosp. v. Dwiggins*, 324 Md. 294, 306, 596 A.2d 1069 (1991) (citing *Gordy v. Ocean Park, Inc.*, 218 Md. 52, 60, 145 A.2d 273, 277 (1958)); *see also Rothman v. Silver*, 245 Md. 292, 296 (1967) ("If a written contract is susceptible of a clear, unambiguous, and definite understanding, . . . its construction is for the court to determine.") The Court's task is to "determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261 (1985). The "search to determine the meaning of a contract is focused on the four corners of the agreement." *Clancy v. King*, 954 A.2d 1092, 1101 (Md. 2008) (quoting *Cochran v. Norkunas*, 919 A.2d 700, 710 (Md. 2007). The court must look to the entire language of the agreement, not merely a portion thereof. *Jones v. Hubbard*, 356 Md. 513, 534–35 (1999); *Sagner v. Glenangus Farms, Inc.*, 198 A.2d 277, 283 (Md. 1964). Unless there is an ambiguity, parol evidence of the parties' intent or meaning should not be considered. *Higgins v. Barnes*, 310 Md. 532, 537, 530 A.2d 724 (1987) ("evidence is inadmissible to vary, alter, or contradict a contract that is complete and unambiguous.").

Applying these principles to the present case, the Court holds that interpreting the plain language of the provisions of Mutual Release Agreement, viewed as a whole, the termination provision in Paragraph 8, including termination of Defendant's obligation under the Kinnier Guaranty, was not effective upon signing of the Agreement, but rather, was conditioned upon payment of the Settlement Amount. The parties dispute whether Paragraph 8 of the Mutual Release Agreement immediately released Ms. Kinnier from any and all obligations under the Factoring Agreement and the Kinnier Guaranty. (Docs. 34, 40). Defendant points to the lack of any conditional language in Paragraph 8 and to the fact that payment of the Settlement Amount

6

must occur before February 13, 2013, while Paragraph 8 allegedly entered force immediately, to argue that the Kinnier Guaranty was terminated immediately upon signing of the Agreement. (Doc. 34). Defendant urges the Court to focus narrowly on the language of Paragraph 8, which states that the Factoring Agreement "is, and shall be immediately terminated and shall be null, void and of no future force and effect," to conclude that Ms. Kinnier's obligations under the Factoring Agreement were terminated at the time the Mutual Release Agreement was signed. (Doc. 34). Plaintiff counters, correctly, that Defendant's interpretation of Paragraph 8 is untenable because it neglects to consider the provisions within the four corners of the contract as a whole. Interpreting the contract provisions together as a whole, the Court concludes that the termination provision in Paragraph 8 can only be reasonably viewed as subordinate to the language of Paragraph 1 and 2(a), which plainly makes release of the parties conditioned upon payment of the Settlement Amount. Paragraph 2(a) specifically references and applies to the Factoring Agreement, stating that the release provision includes, "but is not limited to [claims] arising under the Factoring Agreement." (Doc. 2-1). In addition, the language in Paragraph 2(a) makes clear that all releases are conditioned upon the receipt of the Settlement Amount when it states that "in consideration of the mutual obligations set forth in this Agreement, and conditioned upon Capefirst Funding's receipt of the Settlement Amount, the Capefirst Parties . . . hereby release . . . the BSW parties . . . ." *Id.* If Paragraph 8 were to immediately release Defendant from liability under the Validity Guaranty, as Defendant claims, that interpretation would also mean that Paragraph 8 releases all of the BSW parties of all liability related to the Factoring Agreement. That overly-narrow interpretation is insupportable because it would render the settlement payment condition in Paragraph 1 and 2(a) meaningless. *Sagner,* 198 A.2d at 283 ("[A] contract must be construed in its entirety and, if reasonably possible, effect must be

7

given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed."). Thus, the plain language of the contract when effect is given to the whole Agreement is clear that Paragraph 8 is not a stand-alone clause, and termination of the Factoring Agreement and Kinnier Guaranty is conditioned upon payment of the Settlement Amount.[2]

Accordingly, under the plain language of the contract that the release provisions in Paragraph 8 are conditioned upon the payment and receipt of the Settlement Amount. The Court denies Defendant's Motion for Summary Judgment because the Mutual Release Agreement did not terminate Defendant's obligations under the Kinnier Guaranty.

**B.    Defendant's Counterclaim for Declaratory Judgment Also Fails because The Plain Language of the Mutual Release Agreement Did Not Terminate Ms. Kinnier's Obligation under the Kinnier Guaranty**

The Court denies Defendant's Motion for Summary Judgment on Defendant's Counterclaim because under the plain language of the contract, Paragraph 8 was conditioned upon the receipt of the Settlement Amount. In her Counterclaim, Defendant alleges that Plaintiff breached the Mutual Release Agreement by including Defendant in this action, or alternatively, seeks a declaratory judgment that the Mutual Release agreement terminates the Factoring Agreements and the Kinnier Guaranty. (Doc. 2). To support summary judgment on her Counterclaim, Defendant incorporates the same arguments as to Counts VI and VII that Paragraph 8 immediately terminated her obligations under the Kinnier Guaranty. For the reasons stated above, the Court holds that Paragraph 8 does not terminate Defendant's obligations under

---

[2] The Court finds no ambiguity in the provisions of the Mutual Release Agreement and the Court's ruling rests on the plain language of the Agreement. Because parol evidence may be considered to interpret a contract only where there is an ambiguity, *Higgins*, 310 Md. at 537, the Court declines to consider the Affidavit of Robert W. Gast, Jr. (Doc. 40-1).

the Kinnier Guaranty or under the Mutual Release Agreement.   Thus, Defendant's Motion for Summary Judgment as to her Counterclaim is denied.

## IV.   CONCLUSION

The Court **DENIES** Defendant's Motion for Summary Judgment because under the plain language of the Mutual Release Agreement, Paragraph 8 does not immediately terminate her obligation under the Kinnier Guaranty because the termination provision in Paragraph 8 of the Agreement is conditioned upon receipt of the Settlement Amount as provided in Paragraphs 1 and 2(a).  Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 33) is **DENIED**.

**IT IS SO ORDERED.**

ENTERED this _3rd_ day of March, 2016.

Alexandria, Virginia
3 / 3 / 2016

/s/
_____
Gerald Bruce Lee
United States District Judge